Smith and Bunce v. The People.

SUPREME COURT. Kings General Term, October 1854. Before *Dean, Brown* and *Strong,* Justices.

SMITH & BUNCE pl'ffs in error *vs.* THE PEOPLE def'ts in error.

The statute requiring a license to sell strong and spirituous liquors in small quantities, does not conflict with the 8th and 10th sections of the constitution of the United States.

A state has the right, in adopting general regulations in regard to its internal affairs, to impose restrictions on the sale of goods, and to license persons to pursue a particular business, and the exercise of such power on the part of the state, will not be deemed an imposition of an additional duty upon imports, though such restrictions and license extend to imported goods, as well as to those of domestic origin.

Writ of error to the Suffolk county sessions The plaintiffs in error, merchants, of the town of Huntington, in the county of Suffolk, were indicted for an alleged violation of the statute entitled " Of Excise and the Regulation of Taverns and Groceries."

The indictment set forth that the defendants therein, at various times during the summer of 1853, at the town of Huntington aforesaid, did willfully, unlawfully and wrongfully sell to divers persons strong and spirituous liquors and wines in

quantities less than five gallons at a time, without a license therefor. The defendants were arraigned and demanded a trial. The following evidence was given for the prosecution:

*Richard A. Udall* being sworn, said—I reside at Islip; I am acquainted with the defendants; they are merchants in Babylon, in the town of Huntington. I purchased liquor at their store previous to the last court in September; paid for it; I don't remember whom I bought it of, or whom I paid. Sometimes they have two, sometimes three clerks; Silas Udall is one of them. One or the other of these clerks is generally about the store; I don't know what part of the store the liquor is got from; I have got a gallon or two, or three, at a time; I would hand the clerk my vessel and tell him what I wanted, and that is all I know about it; within years past I have had it of one or other of the defendants; but since the fifth of May last, I don't think I have. I suppose them to be partners; I have had liquor from the store several times since the first of May.

On being cross-examined, witness said—I can't say that I have purchased liquors of the defendants themselves since the fifth of May.

*Nathan E. Basset*, another witness for the prosecution, being sworn, said—I reside at Babylon; I know the defendants; I have bought liquor at their store since the fifth of May last. The defendants are proprietors of the store. I have bought five gallons and less, at a time, and paid for it, frequently.

On being cross-examined, witness said—I am not positive I ever got it of the defendants themselves; I generally got it of the boys, the clerks. The Board of Excise of the town of Huntington, met at Ezra Smith's at Long Swamp, the first Monday of May last; a meeting called of the kind. I was present. The board consisted of Zopher B. Oakley, supervisor, and Platt R. Hubbs and Timothy Carll, justices, and a man by the name of Shepard. I applied for a license; the defendants also applied for one, and rising twenty others. We did not get a license.

The direct examination being resumed, witness said—Sometimes when I have been in the store after liquor, one or the

Smith and Bunce *v.* The People.

other of the defendants would be present; sometimes loth; the liquor is kept in the cellar; there is a door that leads out of the cellar into the street; I generally take the liquor out of this door where I went in for it, and would pay the boys for it there.

The defendants' counsel asked the court to charge the jury:

1. That the principal or employer is not criminally liable for the wrongful act of his clerk or apprentice; and

2. That the excise law of 1830, under which this indictment is found, is repugnant to the provisions of the eighth and tenth sections of the constitution of the United States, and therefore void.

But the judge charged, that if the clerks had sold liquors there under the authority of the defendants, and with their knowledge, then the defendants are liable.

And that the excise law is not repugnant to any provisions of the constitution of the United States, but that it is constitutional and valid. To each of which the defendants' counsel excepted, and brought a writ of error to this court.

*A. T. Rose,* for plaintiffs in error.

I. The principal, or employer, is not criminally liable for the wrongful or criminal acts of his clerk, agent or servant. (*Patterson* v. *The State,* 21 *Ala. R.* 571.) The act complained of, and for which the plaintiffs in error were indicted, is made a misdemeanor by statute, punishable by fine and imprisonment. (*28th section of the statute entitled " Of Excise and the Regulation of Taverns and Groceries,"* 1 *Rev. Stat.* 676, 2d ed.) There was no proof that the plaintiffs in error had done or committed the act charged in the indictment.

II. That portion of the excise law which provides for granting licenses to sell " strong and spirituous liquors and wines," is void, it being repugnant to the eighth and tenth sections of the constitution of the United States. And, as a necessary consequence, all the enactments or provisions in the said excise

law, connected with such licenses, or declaring the penalties and forfeitures for selling without them, are also void. (1 *Kent's Com.* 313; *Brown* v. *The State of Maryland,* 12 *Wheaton's R* 419.)

*W. Wickham, Jr.,* (Dist. Att'y,) for defendants in error.

I. The sale of liquor by the clerks of the defendants, in their store, under their authority and with their knowledge, was a sale by the defendants themselves. (*The People* v. *Hulbut,* 4 *Denio,* R. 133; *State* v. *Dow,* 21 *Vermont R.* (6 *Washburn,* 484.) 1. The testimony fully warranted the jury in the conclusion that the sale was by the immediate direction of the defendants. But if it did not, the judgment will not be reversed for that cause. A bill of exceptions lies only to bring up exceptions taken at the trial to the decision of the court upon the evidence, or to the charge given to the jury. (*The People* v. *Dalton,* 15 *Wend. R.* 581; *The People* v. *Haynes,* 14 *Wend. R.* 546.) 2. The offence of selling spirituous liquors may be established by circumstantial evidence. (*Vallance* v. *Everts,* 3 *Barb. R.* 553; *The People* v. *Hulbut,* 4 *Denio R.* 133.) 3. All who authorize, aid or abet the commission of a misdemeanor are principal offenders. (1 *Chitty's Criminal Law,* 261; *The People* v. *Irwin,* 4 *Denio R.* 129.)

II. The provisions of the statute requiring a license for selling strong and spirituous liquors in small quantities, do not conflict with any provision in the constitution of the United States. (*Ingersoll* v. *Skinner,* 1 *Denio R.* 540; see *Pierce* v. *New Hampshire, &c.,* 5 *Howard, U. S. Reports,* 504.) 1. The sum required to be paid for a license, is neither a duty, impost, or excise, within the meaning of the constitution. It does not relate to the importation or exportation of the liquor, and the amount does not at all depend upon the quantity of liquor sold or consumed. (*See Nevin* v. *Ladut* 3 *Denio,* 437, 444.) 2. Revenue is not the object of the license law, but it is intended as a protection against the consequences of an unlimited traffic in strong liquor. (*Griffith* v *Wells,* 3 *Denio,* 226 )

Smith and Bunce *v*. The People.

*By the Court*, S. B. STRONG, J.—This is an excise case. The defendants dispute the right of a state legislature to impose a duty or tax upon persons licensed to sell spirituous liquors, on the ground that congress alone has the power to impose duties upon liquors from foreign countries.

After the repeated decisions of the courts of this state, it is too late to contend that the payment of duties upon goods imported from foreign countries operates as an absolute and incontrovertible license to sell them. If it would, it would restrict the state legislature from adopting the most necessary police regulations; a power so essential to their well being, if not to their political continuance, that it can not be inferred that the framers of our national constitution intended to abrogate it.

But it is said that the power to impose duties, and the provision that they shall be uniform, evince the intent to make the power exclusive of any state interference. That is so. Doubtless no state can impose any additional duty upon the importation of foreign goods. Possibly no specific duty can be imposed on them when sold. The state, however, has the right to adopt general regulations in reference to its internal affairs, which shall include imported goods equally with those of domestic origin. Thus they can tax both together. So they can, when in their opinion the public good requires it, impose restrictions upon their vendition, as in the instances of licenses to pedlers, the imposition of duties upon goods sold at auction, and the restrictions upon the sales of medicines by apothecaries in New York city. If, in order to make the statutory provisions the more effectual, it is deemed necessary to impose a duty upon the pursuit of any particular business, that would seem to be the appropriate exercise of an essential part of a conceded power. It is not the imposition of a duty upon the importation of foreign goods, although the sale of such goods be a part of the regulated business, nor is it a duty at all upon such goods. In the case under consideration, it is a tax upon business, upon the vendition of spirits generally; both those imported and those of domestic origin. It surely can be no objection to a charge for a license to pursue a particular occupation, that the grantee

may deal to some, or a considerable extent, in foreign goods on which duties have been paid.

The judgment must be affirmed.

---

SUPREME COURT. At Chambers, Brooklyn, October 7, 1854. Before *Dean*, Justice.